UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x

UNITED STATES OF AMERICA,

    -against-

LOUIS HERRERA,

                           Defendant.

------------------------------------ x

ORDER

05 Crim. 939-01 (GBD)

GEORGE B. DANIELS, United States District Judge:

    Having been released from BOP custody on February 18, 2021, the Defendant's letter motion for a six-month jail credit is DENIED as moot.

Dated: SEP 30 2024
New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

Louis Herrera #57343-054
354 Doremus Ave.
Newark, NJ 07105

December 9, 2020

Attn: Hon. Judge George B. Daniels
Federal Courthouse
500 Pearl Street, Part 11A
NY, NY 10007

Dear Hon Judge Daniels,

I was sentenced on October 27, 2020 by your honor and am requesting from you a review of the following information and that you can provide a letter of recommendation to BOP for a jail credit pursuant my jail conditions since March 2020 and pursuant to the recent Supreme Court decision.

I have been under the conditions discussed below for close to 4 months, both here at ECCF and at my prior pre-trial location in New York. I expect that I won't be moved to BOP for at least 2 more months, which would put me at 6 months and would like to ask for a letter recommending a 6 month "jail credit".

Essex County Correctional Facility ('ECCF') has been Essex County Correctional Facility ('ECCF') has been under severe lockdown quarantine and prevention procedures since March 2020. These procedures, while deemed necessary, have created clear violations of:

- US Constitutional Amendment 1 / 1 (Religious Freedom);
- US Constitution Amendment 6 (Procedural and Substantive Due Process, Just Compensation Clauses);
- US Constitution Amendment 8 (Cruel and Unusual Punishment);
- US Constitution Amendment 14 (Privileges and Immunities, Due Process and Equal Protection)
- Section 1985 Conspiracy to interfere with Civil Rights.

On November 25, 2020, the Supreme Court ruled in a landmark decision that "even in a Pandemic, the Constitution cannot be put away and forgotten" and that "even if The Constitution has taken a holiday during the pandemic, it cannot become a sabbatical." ***Roman Catholic Diocese of Brooklyn v. Cuomo***, 2020 US LEXIS 5708 and ***Agudath Israel of America et al. v. Cuomo*** No. 20A90. The ruling now requires that an executive order based on a Pandemic cannot remove or reduce a constitutional right.

These conditions at ECCF include: **(1) 20 to 23 ½ hours of daily isolation/lockup in a small closet sized room, (2) extremely limited access to legal counsel, (3) no family visits either contact or no contact to support family stability and thereby mental health, (4) no access to clergy or religious services, (5) extremely limited access to medical care, and (6) Suspension of 6th Amendment Speedy Trial Act Rights.**

As much as the basis of these procedures are to prevent the spread of Covid19, Federal Judges have historically granted jail credits for excessively harsh jail conditions and constitutional violations suffered. Additionally, detainees in state custody in New York, New Jersey and nationwide have had laws and executive orders passed

requiring the addition of jail credits for being detained under these conditions with as much as 4x credits. No such laws or mandates have been passed for a federal inmate suffering under the exact same conditions and even residing in the exact same facilities.

For example, New Jersey pre-trial detainees with state charges, under NJ S2519 have been offered relief by adding credits to their time served, based on the number of months that they have been incarcerated. As there has been no such similar considerations for federal detainees, this creates a 3553 sentence disparity, as people who have virtually the same circumstances are receiving drastically different sentences. NJ S2519 provides up to **4x time served credits** towards their sentences.

Third Circuit law, see *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006) and *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006), requires that attention must be paid to individuals who have suffered significantly after judicial officers remanded them to federal custody to await disposition of their cases. Downward variances have been consistently granted for even lesser extreme conditions than detainees are currently suffering, including reduction of sentences and double time jail credits. See: *United States v. Ortiz*, 2007 U.S. Dist. LEXIS 87055 (3rd Dist., 2007), *United States v. Sutton*, 2007 U.S. Dist. LEXIS 79518 (3rd Dist., 2007)

In *United States v. Stevens*, 223 F.3d 239 (3d Cir. 2000), the Third Circuit declined to disturb the lower court's determination that it had the legal authority to grant a departure based on pretrial conditions affecting inmates *generally*. See also *United States v. Luna*, 2002 U.S. Dist. LEXIS 6207 (E.D.Pa. Apr. 10, 2002)

## *Roman Catholic Diocese of Brooklyn v. Cuomo*, 2020 US LEXIS 5708 (Nov. 25, 2020, US Supreme Court)

In *Roman Catholic Diocese of Brooklyn v. Cuomo*, 2020 US LEXIS 5708, the Supreme Court ruled in favor of all Americans access to their Constitution rights during a pandemic, ruling that the restrictions by NY Governor Andrew Cuomo were unconstitutional. Quoted:

> "The loss of the First Amendment freedoms, for even minimal periods of time, unquestionable constitutes irreparable injury. Elrod v. Burns 427 US 347, 373 (1976)"
> ***Per Curiam*** - "…even in a pandemic, the Constitution cannot be put away and forgotten"
> ***Justice Gorsuch*** – "Government is not free to disregard the First Amendment in times of crisis" and "Even if the constitution has taken a holiday during this pandemic, it cannot become a sabbatical."
> ***Justice Kavenaugh*** – "…judicial deference in an emergency or crisis does not mean wholesale judicial abdication, especially when important questions of religious discrimination, racial discrimination, free speech, or the like are raised"

While Cuomo restricted church services for the Catholic Church and the Jewish Temples, people were freely able to continue commerce by shopping at stores and freely visiting dozens of other *"essential services"* [hardware stores, bike shops, acupuncturists, liquor stores, marijuana dispensaries, casinos, etc]. Similarly, while Federal Detainees lack family and attorney visits, commissary representatives enter the jail to keep the financial commissary machine moving. Also, guards, civilian kitchen workers and others are admitted each day with a minimal forehead temperature scan procedures. Equal Protection of the Law is required under the 14th Amendment for both churches and detainees.

Grounded in this ruling, the constitutional rights of all Americans including Federal Detainees cannot and must not get "put away and forgotten" and must be maintained during a pandemic.

## Suspension of the 6th Amendment - Speedy Trial Act

The Covid19 crisis has created an extended period of pre-trial incarceration, as the 3rd Circuit Chief Judge has enabled an "Ends of Justice" continuance, which has put a freeze on the speedy trial clock, creating constitutionally excessive pre-trial incarceration that go far beyond the 70 days allowed to its current span of 300+ days.  See *In re Court Operations Under the Exigent Circumstances Created by Covid-19*, 2020 U.S. Dist. LEXIS 158956.  Quoted: "*Regarding the criminal matters, the Court recognizes the trial, procedural and substantive rights of criminal litigants and particularly, their right to a speedy and public trial under the Sixth Amendment (and the particular application of that right in cases involving defendants who are detained pending trial).*" However, the ruling was that public interest outweighs their constitutional rights.  The current extension will expire Jan 4, 2021 and has been in effect since March 16, 2020. **In light of the recent Supreme Court ruling, the "sabbatical" taken by discontinuing all trials and speedy trial rights must be re-examined and relief must be provided to aggrieved parties.**

## "Punishment" not allowed for pre-trial detainees

Pretrial detainees constitute a special category of prisoners. It has been generally held that pretrial detainees are entitled to the same rights as other citizens except to the extent necessary to assure their appearance at trial and the security of the institution. (*Bell v. Wolfish*, 441 U.S. 520 (1979); *Rhem v. Malcolm*, 396 F. Supp. 1195 (S.D.N.Y.), *affd*, 527 F.2d 1041 (2d Cir. 1975))

Although a pretrial detainee may be subject to some of the same restrictions as convicted prisoners, the restrictions become unconstitutional when they amount to punishment. (*Occhino v. United States*, 686 F.2d 1302 (8th Cir. 1982))

In order for the Eighth Amendment's prohibition to apply, a punishment must be involved.  In a criminal law sense, punishment is "any fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime . . . or for his omission of a duty enjoined by law. (*Blacks Law Dictionary* (6th ed. 1990))  As applied to correctional law, a punishment consists of four elements: (1) Action by an administrative body, (2) which constitutes the imposition of a sanction, (3) for the purpose of penalizing the affected person, and (4) as the result of the commission of an offense.  Courts nationwide have suggested that **any treatment to which a prisoner is exposed is a form of punishment**, (*Landman v. Royster*, 333 F. Supp. 621, 645 (E.D. Va. 1971)), because it is an additional punishment above that imposed by the sentencing criminal court. As the result of being a punishment, it is subject to the Eighth Amendment review.

As much as the ECCF lockdown conditions are for the purpose of Covid19 prevention and are not for the purpose of "penalizing the affected person", by the totality of the circumstances, they constitute punishment and relief in some form is a fair consideration.  The least of these forms of relief is the use of "jail credits", such as double or triple time credits that are currently being offered by courts nationwide.

## Lack of Access to Attorneys for Pre-trial detainees

An individual accused of a crime has a fundamental right to counsel and the right to be represented by an attorney of his or her choice. This right is protected by the Fifth and Sixth Amendments and may not be unreasonably limited by jail officials. (*Sander v. Russell*, 401 F.2d 241, 247 (5th Cir. 1968); *State ex rel. McCamie v. McCoy*, 276 S.E.2d 534 (W. Va. 1981)) This right is not altered when the individual is incarcerated. Prison officials may not unreasonably prevent legal counsel from meeting with their prisoner clients as long as the attorney observes all of the rules of the institution. (*Lynott v. Henderson*, 610 F.2d 340 (5th Cir. 1980)). Nor may officials infringe upon a prisoners right to communicate with his or her attorney by placing undue restrictions on his or her visitation rights. (*Jones v. Diamond*, 594 F.2d 997 (5th Cir. 1979)) Courts have held that it is impermissible for prison officials to arbitrarily limit a pre-trial detainee's right to an attorney's assistance.

For the greater part of the ECCF Covid19 containment period, attorney visits have been limited to 15 minute windows whereby the attorney can come to the jail and speak by a video call. These visits end as quickly as they start and are interrupted every few minutes with a software error. The time has recently been extended to around 20 to 30 minutes, but by no means does this allow a detainee the ability to prepare for trial as dictated by 6th Amendment Due Process law and case law. As per the ruling in ***Roman Catholic Diocese of Brooklyn v. Cuomo***, 2020 US LEXIS 5708, the same screening methods that are being used to allow access to the commercial machine of commissary, kitchen workers, guards daily access and other entrants can be used for attorney visits.

## Severe Isolation & Quarantine

The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishments. The Supreme Court has interpreted this clause to prohibit punishments that indicate torture, unnecessary cruelty, or something inhuman and barbarous (*In re Kemmler*, 136 U.S. 436 (1890); *Wilkerson v. Utah*, 99 U.S. 130 (1878)) and when a punishment is unnecessarily cruel in view of the purpose for which it is used. Mental cruelty from isolation lock down has been held by the Supreme Court as sufficient to be addressed by the eighty amendment.

ECCF has had to use isolation as a means of preventing the spread of Covid19. This isolation of federal detainees ranges from 20 hours per day to 24 hours per day. This isolation involves being locked in a large closet sized room, often with no clean drinking water, limited time to shower, no access to exercise. Federal courts will provide relief for deprivation of a prisoner's constitutional right to be free of cruel and unusual punishment during his or her stay in isolated confinement when the conditions of the confinement become such that a prisoner is deprived of personal hygiene and other basic civil rights. This includes something as simple as clean drinking water or the ability to shower.

Courts have held that **when the conditions of isolated confinement are disproportionate to the offense involved or used for an improper means it thus runs afoul of the Eighth Amendment** (*Wagner v. Hanks*, 128 F.3d 1173 (7th Cir. 1997)). Clearly Federal ECCF detainees have not violated any regulations of the institution but are still receiving "punishment" via extensive periods of isolation in jail cells.

Additionally, there have been no books distributed to read, leaving detainees with nothing to do for 20+ hours per day exacerbating their extremely depressed mental states, often losing their will to be alive and having suicidal thoughts. Although ECCF has implemented these procedures due to Covid19, they effectively become "punishment" under legal definitions.

As much as this "punishment" is part of the Covid19 response, consideration for the constitutional violation is warranted.

## No Visitor Access

The ECCF Covid19 lockdown has eliminated both contact and non-contact visits. Many courts have held that, for pretrial detainees, restrictions on visitor access must be justified by a compelling interest. (*Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754 (3d Cir. 1979); *Cooper v. Morin*, 49 N.Y.2d 69, 399 N.E.2d 1188, *cert. denied*, 466 U.S. 983 (1979); *Epps v. Levine*, 480 F. Supp. 50 (D. Md. 1979)).

As much as this may have been necessary to minimize the Covid19 risk, the mental strain from the loss of family connections is a clear and present consideration for relief in the form of jail time served credits. Additionally, as per the ruling in **Roman Catholic Diocese of Brooklyn v. Cuomo**, 2020 US LEXIS 5708, the same screening methods that are being used to allow access to the commercial machine of commissary, kitchen workers, guards daily access and other entrants can be used for family visits.

## No access to Religious Services or Clergy

The First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof … and to petition the Government for a redress of grievances."

As much as an institution is not required to provide clergy, federal jurisprudence does require **access** for clergy to visit an institution to provide religious counseling and services. In *Gittlemacker v. Prasse* 428 F.2d 1 (3d Cir. 1970), the inherent difficulty in applying First Amendment religious freedom to prisoners is pointed out: "*The requirement that a state interpose no unreasonable barriers to the free exercise of a prisoners religion cannot be equated with the suggestion that the state has an affirmative duty to provide, furnish, or supply every prisoner with a clergyman or religious services of his choice. It is one thing to provide facilities for worship and **the opportunity for any clergy to visit the institution**.*"

Throughout the ECCF Covid19 lockdown response, detainees have had no access to clergy for religious services.

In *Cooper v. Pate*, 382 F.2d 518 (7th Cir. 1967), the court allowed prison officials to restrict the religious freedom of certain individuals where the officials showed that such free exercise had been abused at a prior time, but held that a complete ban on religious services was discrimination. No such abuse has been sustained by ECCF detainees, yet they have no access to clergy or religious services due to the Covid19 restrictions.

Congress enacted the Religious Land Use and **Institutionalized Persons Act** (RLUIPA) (42 U.S.C. 2000cc-1(a)), in response to the Supreme Courts holding in *City of Boerne v. Flores* 521 U.S. 507 (1997). The statute provides: "*No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.*"

The ECCF Covid19 lockdown creates for detainees a lack of access to clergy along with no access to religious services, which creates a clear violation of the 1st Amendment. While this may be necessary for the purposes of containing the virus, relief in the form of jail credits is warranted. Additionally, as per the ruling in **Roman Catholic Diocese of Brooklyn v. Cuomo**, 2020 US LEXIS 5708, the same screening methods that are being used to allow access to the commercial machine of commissary, kitchen workers, guards daily access and other entrants can be used for clergy visits.

## Extremely Limited Access to Medical Care

Throughout the ECCF lockdown period, medical staff has been extremely limited, including dentists, orthopedic doctors, optometry services and more. This has caused extensive issues causing deteriorating health conditions for detainees.

In *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974) the Fifth Circuit Court of Appeals reviewed the medical treatment that was available at the Mississippi State Penitentiary. With more than 1,800 prisoners, the prison administration relied upon one full-time physician, several prisoner assistants, and a substandard hospital to provide medical care. The court ruled that the services and facilities were inadequate and ordered the prison administration to *"(1) employ such additional medical personnel as necessary so that the prisons medical staff would consist of at least three full-time physicians, one of which must be a psychiatrist and another the prisons chief medical officer, two full-time dentists, two full-time trained physicians assistants, six full-time registered or licensed practical nurses, one medical records librarian, and two medical clerical personnel, and to obtain the consultant services of a radiologist and a pharmacist; (2) comply with the general standards of the American Correctional Association relating to medical services for prisoners."*

Similarly, ECCF has had extremely limited medical access throughout the Covid19 lockdown. There are thousands of medical requests at ECCF that has not been responded to in any way, due to lack of access to medical personnel. This offers additional support for relief via jail credit considerations. As per the ruling in **Roman Catholic Diocese of Brooklyn v. Cuomo**, 2020 US LEXIS 5708, the same screening methods that are being used to allow access to the commercial machine of commissary, guards daily access and other entrants can be used for medical personnel to enter the jail.

## Conclusion

For the above stated reasons, I respectfully ask for a recommendation letter from you to BOP suggesting that a "jail credit" of 6 months would be appropriate. Thank you.

Signed,

Louis Herrera